179 N.J. Super. 113 (1981)
430 A.2d 949
JACK USDIN AND CHARLES HIRSH, PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, DIVISION OF WATER RESOURCES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 28, 1981.
Decided May 8, 1981.
*114 Before Judges MICHELS and KOLE.
Michael A. Cerreto argued the cause for appellants (Cerreto & La Penna, attorneys).
Richard M. Hluchan, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General of New Jersey, attorney; John J. Degnan, former Attorney General of New Jersey; Erminie L. Conley, Assistant Attorney General, of counsel).
PER CURIAM.
The judgment of the Law Division entered in favor of defendant State of New Jersey, Department of Environmental Protection, Division of Water Resources, is affirmed substantially for *115 the reasons expressed by Judge Harding in his written opinion in Usdin v. Environmental Protection Dep't of N.J., 173 N.J. Super. 311 (Law Div. 1980).
We are satisfied that there has been no taking "without just compensation" as proscribed by U.S. Const., Amend. V, and N.J. Const. (1947), Art. I, par. 20. See Cappture Realty Corp. v. Elmwood Pk. Bd. of Adj., 126 N.J. Super. 200, 216 (Law Div. 1973), aff'd 133 N.J. Super. 216 (App.Div. 1975). Rather, "there has been a noncompensable governmental exercise of the police power." Washington Market Enterprises v. Trenton, 68 N.J. 107, 116 (1975). See, also, Sands Point Harbor, Inc. v. Sullivan, 136 N.J. Super. 436 (App.Div. 1975). In this regard, we deem it appropriate to repeat what we observed in Ronade Associates, Inc. v. Conservation, Dep't, etc., 7 N.J. Super. 132 (App.Div. 1950):
The right and duty of the State, either itself or through its municipal subdivisions or the creation of special districts for the purpose, to take steps looking toward the prevention of floodwaters, with their imminent danger to life and destruction of property, have long been recognized. 56 Am.Jur., § 96, p. 578. The constitutional guaranties that no person shall be deprived of life, liberty, or property without due process of law, do not limit, and were not intended to limit, the subjects on which the police power of a state may lawfully be exerted. 16 C.J.S. [Constitutional Law] § 571, p. 1159. The constitutional guaranty is not intended to interfere with the proper exercise of the police power, nor to prohibit governmental regulation for the public welfare. The due process clause does condition, however, the exertion of the admitted power by a protective assurance that the objective to be attained shall be accomplished by methods consistent with due process in that it shall be for a public purpose; that the law shall be not unreasonable, arbitrary or capricious; that the legislative enactment shall be in conformity with these conditions and not unduly oppressive; that the means selected shall have a substantial relation to the object sought to be attained. The constitutional guaranties relied upon by appellant are not incompatible with the principle, equally vital, because essential to peace and safety, that all property is held under the implied obligation that the owner's use of it will not be injurious to the community and hence subject to the fair exercise of the State's power to make regulations reasonably necessary for health, safety and general welfare. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940. Cf. Brandon v. Montclair, 124 N.J.L. 135 (Sup.Ct. 1940); affirmed, 125 N.J.L. 367 (E. & A. 1940). Mr. Justice Roberts, in Nebbia v. New York, discussed quite comprehensively the question of the exercise of governmental police power, stating "* * * But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. *116 Equally fundamental with the private right is that of the public to regulate it in the common interest. * * *" and quoting Chief Justice Marshall, in Gibbons v. Ogden, 9 Wheat. 1, 203, 6 L.Ed. 23, 71; Mr. Justice Barbour, in New York v. Miln, 11 Pet. 102, 139, 9 L.Ed. 648, 662, and Chief Justice Taney, in License Cases, 5 How. 504, 583, 12 L.Ed. 256, 291, in support thereof, Mr. Justice Roberts stated further: "Thus has this court from the early days affirmed that the power to promote the general welfare is inherent in government" and "The court has repeatedly sustained curtailment of enjoyment of private property, in the public interest. The owner's rights may be subordinated to the needs of other private owners whose pursuits are vital to the paramount interests of the community." [at 139-140.]
In view of our decision, we do not reach the issue of damages for a limited taking discussed by the trial court by way of dict at 173 N.J. Super. 331-332.
Affirmed.